## McCLANAHAN *v.* MORAUER & HARTZELL, INC., ET AL.

No. 70–5097.  Argued October 21, 1971—Decided November 8, 1971

*John Louis Smith, Jr.*, argued the cause for petitioner. With him on the brief was *George H. Mitchell, Jr.*

*James C. Gregg* argued the cause for respondents. With him on the brief was *James F. Bromley.*

PER CURIAM.

Under § 33 (g) of the Longshoremen's and Harbor Workers' Compensation Act, an employer is not obligated to pay compensation to an employee who, without the employer's written approval, settles a claim against a third person for an amount less than the compensation to which the employee is entitled under the Act.   44 Stat. 1441, as amended, 33 U. S. C. § 933 (g).   Certiorari was granted in this case, 402 U. S. 1008 (1971), on the assumption that it presented the question whether the consent judgment entered by the District Judge awarding petitioner damages against a third person evidenced a "compromise" subject to § 33 (g), or an award of damages "determined . . . by the independent evaluation of a trial judge," not subject to § 33 (g) under *Banks* v. *Chicago Grain Trimmers Assn.*, 390 U. S. 459, 467 (1968).   Fuller examination of the case on oral argument discloses that the record does not adequately present that question. The writ of certiorari is therefore dismissed as improvidently granted.

*It is so ordered.*

MR. JUSTICE DOUGLAS, dissenting.

I am unable to agree that the circumstances of this case fail to pose the question whether a consent judgment pursuant to a federal pretrial conference constitutes a "compromise" within the meaning of § 33 (g) of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1441, as amended, which reads:

> "If compromise with such third person is made by the person entitled to compensation . . . of an amount less than the compensation to which such person . . . would be entitled . . . the employer shall be liable for compensation as determined in subdivision (f) of this section only if such compromise is made with his written approval."

Petitioner McClanahan was employed by respondent when a steel bar struck his head. On August 24, 1964, the Bureau of Employees' Compensation found that the injury had caused temporary total disability and ordered the respondent to compensate McClanahan in the amount of $3,780. While these proceedings were pending, the petitioner instituted a civil action in the District Court against a third party, alleging that its employees had contributed to his injury. Before the civil action came to trial, the judge conducted a pretrial conference, during which he spoke with counsel first together and then individually. During these conversations the judge suggested that he had reviewed the file and that he believed the plaintiff's case was worth about $5,000 (although McClanahan had sued for $9,000). Other sums were discussed but the parties accepted his suggestion. On March 3, 1967, a consent judgment was entered for $5,000, of which petitioner's wife received $3,000 and he received $2,000. Of petitioner's share $800 was retained by his lawyer and the remaining $1,200 of the petitioner's

share was transferred to his employer's insurance carrier as partial reimbursement for disability payments previously made under the Board's 1964 order.

Thereafter, on July 26, 1967, the petitioner filed with the Bureau a claim for modification of its 1964 compensation award, alleging that his injuries were more serious than previously realized. The Deputy Commissioner agreed with at least part of his assertions and added $2,328.70 to the prior award.

On appeal, however, the lower courts were persuaded that the employer was immune from further liability because the petitioner had "compromised" his claim against a third party. The Longshoremen's and Harbor Workers' Compensation Act provides that an employer is liable only for the excess of a worker's injury over any amount a worker may recover from a third party. Thus, an employer is benefited when an injured employee obtains a larger judgment from a third party. To protect employers from ill-advised compromises by employees § 33 (g) generally relieves an employer of further liability if, without his written approval, his injured servant settles with another possible defendant. Thus, in the instant case, because the respondent had not subscribed to the consent judgment, the lower courts held that it had been spared further payments to McClanahan.

We granted certiorari to consider whether the lower courts' holdings conflict with our decision in *Banks v. Chicago Grain Trimmers Assn.*, 390 U. S. 459 (1968), that an employee's acceptance of a judicially ordered remittitur in lieu of a new trial was not a "compromise" within the meaning of § 33 (g). 402 U. S. 1008 (1971). *Banks* involved a similar chain of events except that Banks, unlike McClanahan, went to trial and a jury awarded him $30,000, which the judge thought was excessive. The court accordingly said it would order a new trial unless the parties agreed to a remittitur which

would reduce the total judgment to $19,000. Banks accepted without obtaining his employer's consent. We held that his acquiescence had not constituted a "compromise" because it had been induced by the "independent evaluation of a trial judge" and the danger of Banks' accepting too little had not been present. 390 U. S., at 466, 467.

Similarly, no risk of unwise compromise faced McClanahan's employer. Pretrial conferences are the last stop before the final stage in the trial litigation process. Preceded by pleadings and discovery, the conference previews the expected trial scenario, weeds out illusory and frivolous issues, and exposes the substance of conflicting claims. Because pretrial judges review the evidence to be presented in light of the clarified issues, they are in a position to assess the outcome. Thus, one widely applauded function of the pretrial conference has been its encouragement of settlements in personal-injury cases. While some dispute continues as to the degree of persuasion a judge should exercise in obtaining a settlement, critics have not complained that pretrial conference settlements have been unreasonable or unfair. See F. James, Civil Procedure 228 (1965); Wright, The Pretrial Conference, 28 F. R. D. 141, 145–147 (1960); Brennan, Introduction to the Problem of the Protracted Case, 23 F. R. D. 376, 378–379 (1958); Clark, Objectives of Pre-Trial Procedure, 17 Ohio St. L. J. 163, 167 (1956). Thus, McClanahan's trial judge below surveyed the evidence which was to be presented at trial and after discussion with both adversaries suggested that the expected value of McClanahan's case was about $5,000. That assessment was made by one experienced in understanding how juries are likely to view a claim. Absent circumstances not shown here, we should presume that such evaluations are reasonable and do not prejudice employers' interests.

In *Banks*—unlike here—the judge had seen a full jury trial's worth of evidence. But in both situations there were critical assessments of the expected values of plaintiffs' *future* prospects. In *Banks* the employee might well have adduced different, stronger evidence at a second trial, or, the remittitur order may have been vacated on appeal. In settling on a suggested remittitur of $11,000 the court may have extrapolated from hindsight but it had no more, perhaps even less, information concerning Banks' eventual success than had McClanahan's pretrial judge concerning his prospects. The important similarity between these cases is that an independent and informed forecast was made of events yet to unfold.

Moreover, we have construed § 33 (g) so as to confine this defense to those situations where an employer can demonstrate actual prejudice from unilateral settlements by the employee. In *Chapman* v. *Hoage*, 296 U. S. 526 (1936), our first opinion discussing § 33 (g), the employer claimed prejudice because his employee had unilaterally discontinued a lawsuit against a third party. The trial judge had made no assessment of its prospects. The worker had simply failed to prosecute his case. This Court ultimately determined that the lawsuit had been worthless and that absent a showing of actual prejudice the employer was not entitled to a windfall "compromise" defense as a result of its dismissal.

The trend in other jurisdictions has been to avoid the harshness resulting from strict applications of statutes requiring consent of employers in third-party settlements. Under the analogous provision of the New York employees' compensation statute, after which the federal Act was modeled,[1] circumstances similar to the instant facts have been held nonprejudicial to employers.

---

[1] *Banks* v. *Chicago Grain Trimmers Assn., Inc.*, 390 U. S. 459, 466 (1968).

*Sadowski* v. *J. W. Danforth Co.,* 2 App. Div. 2d 728, 152 N. Y. S. 2d 626 (1956), effectively differed from the instant case only in that the conference was held in the courtroom rather than in chambers:

> "Prior to trial of the action, the attorneys concerned had two or three discussions as to settlement. On the day the case was reached for trial, claimant's attorney told him he believed the case would be settled and later asked him to approve a settlement figure of $10,000, which he did. In the presence of his attorney and an insurance company representative, claimant signed a paper, but so far as appears no effort was made to subpoena such paper on the hearing herein. When the case was reached, both attorneys appeared and waived a jury. Claimant testified as to all the facts relevant to liability and damages and exhibits were received. Defendant's attorney did not cross-examine and put in no proof. The trial court then found defendant negligent and the plaintiff free from negligence and directed judgment for $10,250. We cannot say, as a matter of law, upon the record before us, that this result did not represent the trial court's considered judgment and evaluation, based on the evidence, which appears to have been adequate to enable him to reach a fair determination. In a case where the facts were somewhat more favorable to the compensation insurance carrier than here, we held that the judgment represented the 'trial court's evaluation of the damages sustained and was not the result of any settlement or compromise.' (*Matter of Klump* v. *Erie County Highway Department,* 275 App. Div. 1017, motion for leave to appeal denied 300 N. Y. 761.)" [2]

---

[2] In *Klump,* the third party and the plaintiff-employee waived a jury, the latter testified briefly, the former conceded liability, and

The purpose of the Longshoremen's and Harbor Workers' Compensation Act was to guarantee a minimum level of compensation to covered employees. The record clearly reveals that McClanahan has not yet received that statutory minimum.

We should not depart from our holding in *Banks*. Where a plaintiff cannot rely on the judgment and experience of a federal district judge, he has no choice but to refuse any disposition of the case short of a full trial and numerous appeals. In these days of crowded court dockets, the effect of the rule adopted by the Court of Appeals will be to discourage consent judgments in cases of this kind and force all such litigation through the trial process, further overwhelming already overburdened judges. Finally, there is something most inequitable in holding that a personal-injury plaintiff who relies on the good faith and judgment of a federal judge should thereafter be penalized and deprived of compensation for his injury because of his reliance. I would reverse the decision below to enforce the congressional mandate contained in the Longshoremen's and Harbor Workers' Compensation Act as we did in our decision in *Banks*.

---

when both agreed that damages ranged between $4,000 and $4,500, the trial judge entered a judgment for $4,300. Before the compensation board the employer later argued unsuccessfully that this judgment had constituted a compromise. *Klump* v. *Erie County Highway Department*, 275 App. Div. 1017, 91 N. Y. S. 2d 689, leave to appeal denied, 300 N. Y. 761, 90 N. E. 2d 69. The opinion of the state workman's compensation board is reported at State of New York Workman's Compensation Board, Special Bulletin No. 229, p. 192 (1949).