UNITED STATES of America

v.

Elgin RICHARDSON, a/k/a "David Lee," Defendant.

No. 93 Cr. 717 (CSH).

United States District Court, S.D. New York.

Nov. 17, 1993.

---

Mary Jo White, U.S. Atty., S.D.N.Y., Mark P. Goodman, Asst. U.S. Atty.

Mitchell A. Golub, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

The indictment in this case charges defendant with counts of mail theft, armed assault of a United States Post Office letter carrier, possession of stolen mail and the use of a firearm during and in relation to a crime of violence. Trial is presently scheduled for December 6, 1993 before Judge DiCarlo.

### BACKGROUND

Defendant was arrested by the New York City police on May 14, 1993 after allegedly attempting to cash a stolen check with a female accomplice. After receiving *Miranda* warnings and signing a written waiver of rights form, defendant signed a written statement admitting his knowledge that the checks were stolen. United States Postal Inspectors became involved when shortly after his arrest the New York City police contacted them about the potential theft of United States mail.

William McPaul, a letter carrier who was robbed on April 26, 1993 and again on May 8, 1993, was shown a photo-array containing six pictures, including one of the defendant, on May 17, 1993. McPaul identified the defendant as one of the men who robbed him on

both occasions. On May 21 [1], 1993 the defendant was arrested by federal authorities. While in custody, defendant complied with the authorities' request to provide handwriting exemplars.

Defendant has moved for several forms of relief: (1) suppression of statements made after his arrests on May 14 and on May 21; (2) suppression of the pre-trial identification by McPaul and any in-court identification by McPaul of the defendant at trial; (3) suppression of the handwriting exemplars provided by defendant; and (4) an order directing the government to provide defendant notice of any extrinsic acts evidence it will seek to introduce at trial.

## DISCUSSION

### Suppression of Defendant's Statements

Defendant's memorandum asserts that although he recalls receiving *Miranda* warnings on both May 14 and May 21, he did not "knowingly waive [his] rights before answering questions" because his lack of a "sophisticated understanding of the criminal justice system despite a fairly large number of arrests prior to the current charges" prevented him from understanding what the "rights entailed." Defendant's Memorandum at 3. Defendant also argues that he was denied his right to confer with counsel retained on his pending state forgery charges before waiving his *Miranda* rights on after the May 21 arrest.

The government represents that it will not seek to introduce at trial any statements made by the defendant after his arrest on May 21, 1993. *See* Government's Memorandum in Opposition at 5. The government will be held to this representation and is precluded from admitting any such statements in its case-in-chief. Accordingly, whether or not defendant's rights were knowingly waived and whether defendant was denied his right to confer with counsel prior to making statements on May 21, 1993 need not be addressed by the Court. Whether defendant knowingly waived his

rights before the May 14, 1993 statements, however, could present a factual issue to be determined in an evidentiary hearing given that the government has not indicated that it does not intend to introduce such statements.

Ordinarily the failure of defendant to submit an affidavit by anyone with personal knowledge of the underlying facts makes such a hearing unnecessary. The only affidavit filed in support of the motion is an affidavit by his attorney, Mitchell Golub, who does not claim to have personal knowledge of the facts. It is well established that "[w]ithout a supporting affidavit of someone with personal knowledge of the underlying facts, the court need not resolve factual disputes that may be raised by the moving papers." *United States v. Caruso,* 684 F.Supp. 84, 87 (S.D.N.Y.1988); *see also United States v. Gillette,* 383 F.2d 843, 848–49 (2d Cir.1967); *United States v. Gregory,* 611 F.Supp. 1033, 1044 (S.D.N.Y.1985) (Weinfeld, J.). As defendant has "failed to meet his initial burden of making specific factual allegations of illegality," *Gregory,* 611 F.Supp. at 1044, no hearing is necessary on the present record.

As a practical matter, however, Richardson can remedy the delinquency by attesting to the accuracy of counsel's affidavit. In order that the case be made trial ready for Judge DiCarlo, I will hold a hearing on November 24, 1993 at 10:00 a.m. in Room 307. If Richardson is prepared to attest under oath to counsel's affidavit, I will permit the hearing to go forward.

### Suppression of Identification Testimony and Evidence

Defendant argues that this Court should suppress any in-court identification by McPaul and the evidence of his pre-trial identification because the government's use of the photo-array procedure "is highly suggestive and prejudicial." Defendant's Memorandum at 4. As I understand defendant's argument, his complaint is that because the use of the photo-array procedure is itself inherently suggestive this Court should hold a hearing to explore the circumstances sur-

---

1. Defendant states that the arrest by Postal Inspectors occurred on May 20, 1993. The government states that the arrest took place "on or about" May 21, 1991. For the sake of simplicity, I will refer to that second arrest as having taken place on May 21, 1993.

rounding its use. Defendant's argument is simply that "[t]he use of this photospread by the government, rather than a less suggestive lineup has given rise to a substantial likelihood of a [sic] irreparable misidentification." Defendant's Memorandum at 5. Defendant never specifically alleges that either the particular photo array in this case, or the circumstances in which it was employed, were impermissibly suggestive in any manner.

■ Defendant's argument fails because it is well settled that the use of a photo array is not inherently suggestive, and its mere use will not prevent admission of the pre-trial identification or an in-court identification by the witness. Instead, a specific determination must be made in each case as to whether the particular pre-trial identification procedure employed was unnecessarily suggestive or prejudicial. *See Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968) ("We are unwilling to prohibit [the photographic array procedure], either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead ... each case must be considered on its own facts...."). The Court's necessary inquiry is the following:

"When a witness has made a pretrial identification, the analysis of whether he is to be permitted to identify the defendant at trial normally requires a one-step or two-step inquiry. The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt. If they were not, the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification."

*United States v. Maldonado–Rivera,* 922 F.2d 934, 973 (2d Cir.1990), *cert den.* — U.S. ——, 111 S.Ct. 2858, 115 L.Ed.2d 1025 (1991)

Defendant does not claim that the pictures themselves suggested defendant's guilt, or that any comments or indications were made by the officers overseeing the photo-array identification to induce Mr. McPaul to select defendant's photo. Defendant has wholly failed to meet its burden of stating "sufficient facts which, if proven, would [ ] require[ ] the granting of the relief requested," and accordingly an evidentiary hearing need not be held. *United States v. Culotta,* 413 F.2d 1343, 1345 (2d Cir.1969), *cert den.* 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510 (1970); *see also United States v. Castellano,* 610 F.Supp. 1359, 1439 (S.D.N.Y.1985) ("No evidentiary hearing need be held where a defendant's allegations are general and conclusory or based on suspicion and conjecture.")

Because pre-trial identifications involving the use of photographic arrays are not inherently unreliable, and because defendant has made no showing that the photo array identification procedure was unduly suggestive, I conclude that neither the pre-trial nor any in-court identification of defendant by McPaul need be suppressed. Accordingly, his motion to suppress this evidence is denied, as is his request for an evidentiary hearing.

*Suppression of the Handwriting Exemplars*

■ Defendant moves to suppress handwriting exemplars he provided the government after his arrest on May 21, 1993, arguing that these exemplars were provided without "the opportunity to confer with counsel." Defendant's Memorandum at 5. Defendant's motion is denied.

■ Defendant cannot argue that the taking of his handwriting exemplars violated his Fifth Amendment privilege against self-incrimination, and I do not understand him to do so. That privilege does not extend to the production of physical evidence, a category to which handwriting exemplars belong. *See United States v. Jacobowitz,* 877 F.2d 162, 169 (2d Cir.), *cert. den.* 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989); *Gilbert v. California,* 388 U.S. 263, 266–67, 87 S.Ct. 1951, 1953–54, 18 L.Ed.2d 1178 (1967) (dictum) ("A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside [the Fifth Amendment's] protection.").

■ Nor was his Sixth Amendment right to counsel violated. It is well established that the Sixth Amendment right to counsel does not attach until charges have been filed regarding the subject of interroga-

tion. *Moran v. Burbine,* 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986); *accord United States v. Gouveia,* 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984) (right to counsel attaches at the initiation of adversary judicial proceedings). Moreover, it is clear that the taking of handwriting exemplars before indictment is not a "critical stage" to which the Sixth Amendment right to counsel attaches. *See Gilbert v. California,* 388 U.S. at 267, 87 S.Ct. at 1954 (taking of handwriting exemplars before indictment without presence of counsel did not violate Sixth Amendment because it was not a 'critical stage' of the criminal proceedings entitling petitioner to the assistance of counsel); *cf. United States v. Jacobowitz,* 877 F.2d at 169.

Defendant does not assert that he requested and was denied the opportunity to confer with counsel. Defendant asserts instead that "even if he did not request to speak with counsel" the government's request for handwriting exemplars without notice to his counsel on the pending state charges was a violation of his right to counsel. Yet, defendant cites no case supporting his proposition that when the right to counsel has attached in a state charge, that right to counsel carries over to the investigation of different federal offenses before indictment for those offenses. Indeed, this Court has found authority to the contrary.

In *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), after the defendant's Sixth Amendment right to counsel had attached with respect to an armed robbery charge, police questioned defendant about other crimes (the "Caledonia offenses") for which defendant's right to counsel had not yet attached. The Supreme Court held that "[b]ecause [defendant] provided the statements at issue here before his Sixth Amendment right to counsel with respect to the Caledonia offenses had been (or ever could have been) invoked, that right poses no bar to the admission of the statements in this [prosecution of the Caledonia offenses]." *Id.* 501 U.S. at ——, 111 S.Ct. at 2208. The Court's reasoning is particularly instructive:

"The Sixth Amendment right ... is offense-specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced.... '[T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities....' *Maine v. Moulton,* 474 U.S. 159, 179–180 [106 S.Ct. 477, 489, 88 L.Ed.2d 481] (1985).

'Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses.' *Id.* at 180, n. 16 [106 S.Ct. at 489 n. 16]."

*Id.* 501 U.S. at —— – ——, 111 S.Ct. at 2207–08.

In a case similar to the one at bar, the Fifth Circuit, relying upon *McNeil,* held that a defendant's Sixth Amendment right to counsel was not violated when federal authorities questioned defendant about a noncharged offense after his right to counsel had attached with respect to a different state charge. *See United States v. Carpenter,* 963 F.2d 736 (5th Cir.), *cert. den.* —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992). Holding that the case did not fall into a possible exception for "extremely closely related" or "inextricably intertwined" offenses, the court noted that "[t]he state burglary charge predated the federal firearm charge; a warrant was issued for his arrest on the burglary charge before the events leading up to the firearm charge. In fact the only connection between the two crimes is that [defendant] possessed the firearm when he was arrested on the warrant for the burglary charge." *Id.* at 740–41.

A court in this circuit also recently held that a defendant's Fifth and Sixth Amendment rights were not violated in a factual scenario close to the one at bar. In *United States v. Garey,* 813 F.Supp. 1069 (D.Vt. 1993), the defendant was arrested and charged with assault by state police who seized a firearm during the course of the

arrest. The defendant was not charged for possession of the firearm in the state prosecution. When defendant several months later requested, and was granted, release of the gun, the police notified federal officials who then arrested defendant for possession of the gun. The defendant argued that his questioning by federal officers violated his Sixth Amendment right to counsel because his right to counsel had attached in his state charges to which he had pled guilty and been sentenced.

The court rejected his argument and held that because the defendant had not yet been formally charged in connection with the federal offenses the right to counsel had not yet attached. *Id.* at 1072. The court further dismissed defendant's contention that his right to counsel had attached because the federal prosecution was an extension of the state prosecution. It held that "[n]otwithstanding the fact that separate governmental bodies are involved, the offenses charged are quite distinct.... Although technically related by a common nucleus of facts, they are separate crimes." *Id.* (citations omitted). *See also United States v. DeVillio,* 983 F.2d 1185, 1191 (2d Cir.1993) (defendants' Sixth Amendment rights were not violated, and tapes would not be suppressed, when after right to counsel had attached with respect to one burglary, tapes of defendants' conversations were made on behalf of government investigating an uncharged burglary).

Just as in *Carpenter* and *Garey,* in this case the two prosecutions are not inextricably intertwined. Defendant was arrested and charged by state authorities with forgery and possession of forged instruments. Several days later, federal authorities arrested defendant and later charged him with assault on a United States postal carrier, possession of stolen mail, theft of mail and use of a firearm in relation to the crime of violence. The state prosecution and the federal prosecution involve separate crimes and their only connection is the fact that defendant's alleged possession of forged documents led to his arrest on the federal charges.

I conclude that because defendant had not yet been indicted or arraigned on the federal offenses, defendant's right to counsel had not

attached at the time of the request for handwriting exemplars notwithstanding defendant's representation by counsel on pending unrelated state charges. Therefore, defendant's right to counsel was not violated by the postal inspectors' request for provision of handwriting exemplars without first notifying his counsel on the state charges. Defendant's motion to suppress the handwriting exemplars is accordingly denied, as is his request for an evidentiary hearing.

Defendant requests that in the event the Court declines to suppress the exemplars, the Court direct the government to provide defendant with any reports concerning his handwriting exemplars. The government does not object to this request. *See* Government's Memorandum at 10. Accordingly, the government is directed to provide any such reports in a timely fashion.

*Rule 404(b) Notice of Introduction of Defendant's Extrinsic Acts*

▆▆▆ Defendant finally moves this Court to direct the government to provide defendant notice of any prior bad acts of defendant it intends to introduce at trial. The government notes that defendant appears to seek notice under Fed.R.Evid. 404(b). Rule 404(b) requires that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial ... of the general nature of any [evidence of other crimes, wrongs, or acts of the accused] it intends to introduce at trial." The government has agreed to comply with the requirements of Rule 404(b) and represents that it will provide defendant with such notice within at least 10 days of trial if it intends to seek the admission of evidence contemplated by that rule. Government's Memorandum at 10. Defendant objects to the government's agreement to provide notice of only the "general nature" of the extrinsic act evidence it intends to admit and requests that the government be directed to provide notice of the "specifics of prior bad acts."

I will not direct that the government provide more than notice of the "general nature" of the extrinsic acts evidence it will seek to admit because that is all that is required by the specific language of Rule 404(b) and it is

sufficient to allow the defendant to adequately prepare for trial. *See e.g. United States v. Williams,* 792 F.Supp 1120, 1134 (S.D.Ind. 1992) (Rule 404(b) requires only provision of "information sufficient to indicate the general nature of the evidence.")

Accordingly, since the government does not object to the request, the government is directed to provide any such notice within 10 days of trial, which is a reasonable amount of time. *See id.*

### CONCLUSION

For the reasons stated above, defendant's motion is denied in its entirety.

It is SO ORDERED.